**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

August 31, 2022

**VIA CM/ECF**

Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:     *Javed v. Ghazi Associates Inc. et al.*
                <u>Civil Action No. 22 Civ. 01433 (AMD)(RLM)</u>

Dear Judge Mann:

      This office represents named plaintiff Zeshan Javed (the "Plaintiff") in the above-referenced matter. We write, jointly with counsel for defendants Ghazi Associates Inc. ("Ghazi") and Chaudhry Jalil Ahmad ("Ahmad" and, collectively with Ghazi, the "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's August 1, 2022 Order. Counsel for the parties respectfully submit that the Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**     **Background and Procedural History**

      Plaintiff commenced this wage and hour collective action against Defendants on March 15, 2022, seeking unpaid overtime premiums and damages for Defendants' alleged failure to provide wage notices or accurate wage statements. (*See generally* Dkt. No. 1 ("Complaint")). On April 18, 2022, the parties filed a letter motion requesting referral to the EDNY Mediation Program on consent, which the Court granted that same date. (Dkt. No. 9). Defendants filed their Answer to the Complaint on April 21, 2022, denying all material allegations. (Dkt. No. 10).

      In order to facilitate settlement discussions, the parties exchanged pre-mediation discovery. Specifically, Plaintiff exchanged records including certain paystubs Plaintiff received during his employment with Defendants as well as a few photographs of the timekeeping system utilized by Defendants which he maintained for years 2020 and 2021. Defendants produced timekeeping and payroll reports, including handwritten timecards that were used to process the payroll reports. After the exchange of the parties' respective records, counsel for the parties held several discussions regarding the lack of records produced for 2021 and the contents of the records that had been produced, in an effort to reconcile the hours Plaintiff alleged he worked in comparison to the hours recorded in Defendants' produced payroll reports. In response to these

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

exchanges, counsel for Defendants prepared a spreadsheet containing inconsistencies identified in Defendants' payroll reports and handwritten timecards for a few weeks of Plaintiff's employment period.

The parties participated in a mediation session on July 28, 2022 before mediator Sarah Kula, Esq. After a full-day of negotiations, the parties were able to reach a settlement in principle at the mediation session.

## II.    The Settlement Accounts for Litigation Risk

Throughout the litigation, the parties have disputed several issues of fact concerning the weekly hours worked by Plaintiff and the accuracy of Defendants' records. Although Plaintiff alleges that he consistently worked between approximately fifty (50) to sixty (60) hours per week as a counter employee and baker, the time records produced by Defendants show fewer hours, ranging generally between forty (40) to fifty-one (51) hours per week. Plaintiffs also allege that the timecards produced by Defendants do not reflect the full hours Plaintiff worked for several weekend shifts. Plaintiff contends that Defendants overall practices were designed to reflect fewer hours than he worked each week and that they discounted the hours for meal breaks and post-shift off-the clock work consisting of time spent attending to deliveries and additional tasks he was required to complete before being dismissed from his shift the next day. Defendants dispute that there was any work performed by Plaintiff while he was off-the-clock.

Despite the parties' dispute over the accuracy of the payroll and timekeeping records, Plaintiff recognizes that he does not have additional documentation to refute the recorded information contained in Defendants' records, which provides a steep obstacle to succeeding on his claims and that these records could impact the amount of damages he could be awarded at trial if a factfinder credits Defendants' overall records. Plaintiff also acknowledges that because he worked overnight shifts, he was often working alone such that he is not in communication with anyone who could testify that he often worked beyond his scheduled end time. Given the fact-intensive nature of these inquiries, it is likely that substantive answers to these issues would not be resolved until after trial.

Given these disputes, to facilitate the settlement discussions, prior to the mediation session, Plaintiff's counsel exchanged a damages analysis incorporating the information contained in Defendants' time and payroll records, as well as Plaintiff's best estimates of the hours that were allegedly omitted from his paystubs. The damages Plaintiff's counsel calculated included: $51,104.43 in unpaid wages, $10,000.00 in damages for wage notice and wage statement violations,[1] $51,104.43 in FLSA and NYLL liquidated damages, and $12,465.58 in NYLL interest.

---

[1] Although Plaintiff's mediation damages spreadsheet included the $10,000 maximum penalty permitted under the 2015 amendment to the New York Wage Theft Prevention Act ("WTPA"), during the mediation discussions, Plaintiff's counsel agreed that Plaintiff's statutory wage notice and wage statement damages should be measured under the original version of the WTPA, such that Plaintiff's maximum possible recovery is $119, 674.44 as opposed to the $124, 674.44 reflected in Plaintiff's mediation damages spreadsheet.

www.PeltonGraham.com

Hon. Roanne L. Mann
Joint FLSA Settlement Fairness Letter
Page **3** of **6**

The parties believe that the settlement amount (i.e., $55,000.00), which represents more than Plaintiff's "actual" unpaid wage damages and approximately 46% of his total damages, is a fair recovery based on the risks associated with establishing the calculated damages, and the risks associated with proceeding to trial.

### III.    Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle this action for a total amount of $55,000.00 (the "Settlement Amount"), inclusive of attorney's fees and costs. Of the Settlement Amount, the gross amount of $19,149.85 (consisting of $1,224.80 in expenses and $17,925.05 in attorneys' fees) is payable to Plaintiff's counsel. The remaining $35,850.15. is payable directly to Plaintiff (the "Net Settlement Amount").

In keeping with the trend in this circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claim arising before Plaintiff signed the Settlement Agreement, related to unpaid wage payments and the claims that Plaintiff could have addressed in this litigation arising out of the FLSA/NYLL wage and hour regulations. *Mejias v. Vette Works Inc.,* No. 19 CV 922 (CLP), 2021 U.S. Dist. LEXIS 258339, at *4 (E.D.N.Y. Apr. 2, 2021) (recognizing that a general release limited to wage and hour claims arising from the plaintiff's employment with defendants is consistent with *Cheeks*). The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the claims and defenses presented in this Action or Settlement.

The Agreement also includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.,* No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement clause is mutual and binds Plaintiffs and Defendant. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement provisions. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving a mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement provision contains a "carve-out" clause

permitting the Parties to make truthful statements regarding their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA and Defendants' interests in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 ( S.D.N.Y. April 4, 2016) (approving a bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15-CV-2588 (AMD)(LB), 2016 U.S. Dist. LEXIS 29158 at *6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal a non-disparagement clause with a "carve-out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving a non-disparagement provision that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The parties are represented by experienced counsel who have advised them prior to executing the Settlement Agreement on the significance of the settlement terms and potential implications, including the release terms and non-disparagement clause.  Further, the mutual non-disparagement clause is bolstered by additional provisions that provide preliminary steps prior to either party exercising their right to commence an action in the event of a breach of the agreement in an agreed-upon forum.

### IV.     Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., to date, Plaintiff's counsel has spent more than 84 hours in prosecuting and settling this matter, resulting in a lodestar of $25,035.22. Pelton Aff. Ex. C. Plaintiff's counsel has spent $1,224.80 in actual litigation costs, including filing and service of the complaint. *Id.* at Ex. D. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $17,925.05) is fair and reasonable as it represents one-third (1/3) of the Settlement Amount, after subtracting litigation costs, and conforms with the fee Plaintiff negotiated with Plaintiff's counsel upon signing his retainer agreement. *Calderon v. Bagel Mentch, Inc.*, No. 21-CV-0781 (JMW), 2022 U.S. Dist. LEXIS 67852, at *11 (E.D.N.Y. Apr. 12, 2022) (discussing that courts in this district "routinely approve of one-third contingency fees for FLSA cases").

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed

Hon. Roanne L. Mann
Joint FLSA Settlement Fairness Letter
Page **5** of **6**

in this district."); *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates).

For the purposes of this settlement, Defendants take no position with respect to Plaintiff's counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

**V.      The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principle question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer; to the contrary, the proposed Settlement Agreement was reached only after a full-day mediation session and pre- and post-session discussions with an experienced neutral mediator, several communications between counsel directed at reconciling the information in Defendants' records and the disputes over the total hours worked by Plaintiff, and resulted from vigorous arm's-length negotiations and contentions over Plaintiff's claims and Defendants' contentions. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks and obstacles of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff. Rather than move forward with lengthy and costly litigation, including dispositive motion practice and trial, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*      *      *      *      *

Hon. Roanne L. Mann
Joint FLSA Settlement Fairness Letter
Page **6** of **6**

      As demonstrated above, the settlement is a result of substantial negotiations and compromise by all parties. The parties believe that the settlement is completely fair, reasonable and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

      We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s/ Brent E. Pelton* | By: */s/ Irene Sinayskaya* |
| Brent E. Pelton, Esq. | Irene Sinayskaya, Esq. |
| Taylor B. Graham, Esq. | **Sinayskaya Yuniver, P.S.** |
| **PELTON GRAHAM LLC** | 710 Avenue U |
| 111 Broadway, Suite 1503 | Brooklyn, New York 11223 |
| New York, New York 10006 | |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

Encls.

www.PeltonGraham.com